[No. 729.]

## THE SIERRA NEVADA SILVER MINING COMPANY, RESPONDENT, v. W. H. SEARS, APPELLANT.

INJUNCTION—SUFFICIENCY OF COMPLAINT.—Where the complaint, in an action to recover certain shares of mining stock, alleges that plaintiff made the purchase of said stock in order to buy its peace, to save annoyance, avoid litigation and prevent a cloud upon its title; and where the value of said shares of stock are merely nominal, and where the remedy at law would be inadequate, and the injury to plaintiff be irreparable: *Held*, that equity will interfere by injunction and restrain the party, wrongfully in possession of the property, from disposing of it. (*Beatty, J., dissenting.*)

IDEM—INSOLVENCY OF DEFENDANT.—It is unnecessary, in cases of this character, to allege in the complaint the insolvency of the defendant.

IDEM—VERIFICATION TO COMPLAINT.—Where the verification to the complaint is in the form required by section 113 of the Practice Act (1 Comp. L. 1174): *Held*, to be sufficient.

IDEM—WHEN DEFENDANT MUST SHOW THAT HE IS AN INNOCENT PURCHASER.—The question whether or not due diligence had been used by

. plaintiff to recover certificates of stock, alleged to have been stolen from it, or to put third parties on notice of its loss, cannot be raised by defendant, unless he shows that he is an innocent purchaser in good faith.

Granting an Injunction—When within Discretion of the Court.—If the complaint states a *prima facie* case, and no answer is filed, no showing made upon the merits of the case, and the district court grants a restraining order: *Held*, that as the granting or refusing of an injunction *pendente lite* rests very much in the discretion of the court, its order will not be disturbed.

Appeal from the District Court of the First Judicial District, Storey County.

This action was commenced by the Sierra Nevada Mining Company, a California corporation, against the defendant W. H. Sears and the Allen Company, a Nevada corporation. The complaint alleges that about the 9th day of January, A. D. 1871, while the plaintiff was in the possession of its mining ground, working and developing the same, divers parties, among whom was the defendant, the Allen Company, laid claim to a portion thereof, and caused the plaintiff such annoyance, that, to quiet the asserted claim of defendant, and to buy its peace, without acknowledgment of any right or title in said defendant to any portion of plaintiff's mining ground, or any ground, it became advisable for plaintiff to buy, and thereupon plaintiff did buy, and became the owner of the entire capital stock of defendant aforesaid, and from thence hitherto plaintiff hath continued to be, and now is the owner thereof; that the capital stock of the Allen Company then consisted, and now consists, of nine hundred and twenty-five thousand dollars, divided into eighteen hundred and fifty shares, of the par value of five hundred dollars each; that fourteen hundred shares thereof were represented by the stock certificates of defendant aforesaid, issued by it from its books, and bearing the number one hundred and seventy-four, and in the name of T. F. Smith, trustee; that four hundred and seventeen shares thereof were represented by the stock certificate of defendant aforesaid, issued by it from its books, and bearing the number one hundred and seventy-six, and

in the name of T. F. Smith, trustee; that said pieces of stock were, by said Smith, for a valuable consideration, duly indorsed, transferred and delivered unto his lawful assignee, and were, from said assignee by this plaintiff, for a good, sufficient and valuable consideration, duly purchased and received; that plaintiff therefrom had the same in its possession, holding them, and each of them, as the owner thereof, until the same were lost; or, as plaintiff is informed and believes, were stolen from it; that plaintiff never voluntarily or knowingly parted with the possession or ownership of said stock or any thereof; that, though diligently inquiring for the whereabouts of said stock, plaintiff could learn nothing thereabout until within the week last past it was informed, and upon such information charges the truth to be, that W. H. Sears, defendant herein, presented the above-described stock in said certificates numbered, respectively, one hundred and seventy-four and number one hundred and seventy-six, claiming to be the owner thereof, unto his co-defendant, the Allen Company, and from it demanded the issuance of new certificates in lieu thereof, and that said Allen Company, accepting such demand as legal and just, did, in fraud of plaintiff's rights, issue unto said Sears two certificates of its stock, one numbered one, for fourteen hundred shares, and one numbered two, for four hundred and seventeen shares, both issued to W. H. Sears, trustee, and to him delivered and by him now held, while the old certificates, numbers one hundred and seventy-four and one hundred and seventy-six, were taken up by said Allen Company, and are now held by it; that on the 19th instant plaintiff made demand in writing upon said Sears to deliver to it said stock so issued, as aforesaid, to T. F. Smith, trustee, and in lieu thereof to surrender to plaintiff the stock issued, as aforesaid, to said Sears, trustee, but he hath neglected and refused, and still neglects and refuses to comply with such demand, or to deliver said stock or any part thereof to plaintiff; that a like demand was made upon the Allen Company, and that it also refused to comply therewith or with any part thereof; that plaintiff

is informed and believes, and so charges the truth to be, that defendant Sears, claiming to be the owner of the stock, is attempting to take control of the affairs of the defendant, the Allen Company, and threatens and intends to move its books, papers and effects to the City of San Francisco in the State of California, and beyond the jurisdiction of this court, and further threatens to disincorporate said defendant, the Allen Company, as a corporation of Nevada, and reincorporate the same in the State of California; all of which is in violation of plaintiff's rights respecting the subject of this action, and tending to render the judgment asked herein ineffectual; that the value of the stock aforesaid is merely nominal, and that it is impossible to measure plaintiff's injuries, by reason of the wrongful acts and doings of defendant, in damages, for that its title is thereby clouded, its property depressed in value in a manner which cannot be estimated in dollars and cents, and that it will be irreparably injured if such proceedings be continued. Wherefore, etc., etc. The defendant, the Allen Company, made default.

The other facts are sufficiently stated in the opinion.

*De Long & Belknap,* for Appellant.

I. The action is really one to recover the possession of personal property, and this plaintiff had a speedy and adequate remedy at law. The plaintiff should have given a bond, replevied the property, and thus put it out of our power to do the injury it is claimed we have threatened. (Kerr on Injunctions, Sec. 199.)

II. In this action it is not pleaded that the defendant is insolvent and unable to respond in damages; nor is it averred that the plaintiff did not have an adequate remedy at law. (*Tomlinson* v. *Rubio,* 16 Cal. 206–7; *Morris* v. *Gorham,* 6 Cal. 41; *Leach* v. *Day,* 27 Cal. 643; *Bennett* v. *Whitesides,* 13 Cal. 157–8; *Robinson* v. *Russell,* 24 Cal. 467; *Hihn* v. *Peck,* 18 Cal. 640.)

III. The office of an injunction is to prevent an impossible injury, and it is not applicable to those where the par-

ties have an adequate remedy at law. (*Atchison* v. *Peterson*, 1 Montana, 569; Kerr on Injunctions, Sec. 200; High on Ex. Legal Rems., 202, Sec. 12; Thompson on Prov. Remedies, 205, Sec. 6.)

Plaintiff, by not replevying this stock, avoids giving the bond necessary for our indemnity, and yet as completely restrains our use of this property as if it had been taken from us. Under such circumstances, we have the right to complain of this departure from correct practice.

IV. If this stock is stolen stock, it can be replevied in the hands of any party found in possession of it. (*Colson* v. *Arnot*, 57 New York, 253; Kerr on Injunctions, Secs. 201, 204, 206.)

V. The complaint shows that this stock was left in such condition as to clothe any person having its possession with the *indicia* of ownership, thus giving third parties a full right to deal with him as the owner. (*Thompson* v. *Toland*, 48 Cal. 99; *Shaw* v. *Spencer*, 100 Mass. 382; *Holbrook* v. *N. J. Zinc Co.*, 37 N. Y. 616; *Walsh* v. *Sage*, 47 N. Y. 143.)

VI. The complaint is wholly insufficient in that it is predicated as to the danger threatened wholly upon information and belief. (Thompson on Prov. Rem., Sec. 4, 317; Sec. 6, 318; *Campbell* v. *Morrison*, 7 Paige, 157; *Bank of Orleans* v. *Skinner*, 9 Id. 304; *Crocker* v. *Baker*, 3 Abbott, 182; *Rateau* v. *Bernard*, 12 How. Pr. 464; 13 Louisiana, 44; Kerr on Injunctions, Sec. 198; *Sherman* v. *Clark*, 4 Nev. 138; *People* v. *Canal Board*, 55 N. Y. 397; Thompson on Prov. Rem., Sec. 7, 319.)

VII. It is shown that the Allen claim and the Sierra Nevada claim are not the same premises. There is only a partial conflict between the two. This being the case, to attempt to quiet the title to that portion by buying the entire or nearly the entire stock of the Allen Company was simply a mistake. The fact that this company by law was incapable of making this purchase is shown by the following authorities: 2 Cranch, 127; 4 Wheaton, 631; 4 Peters, 152; Angell & Ames on Corp. 151, 159, 160, 237; 1 Ed. Ch. Rep. 531, 532; 5 Cal. 214; 2 Id. 524; 2 Douglass (Mich.), 230; 7 Wend. 280; 3 Id. 482.

*Whitman & Wood,* for Respondent.

I. The motion made by appellant in the district court, precisely as a demurrer, confesses all material facts alleged in the bill. If, then, these be sufficient to justify the action of the court below, this appeal must fail, and this court will not lightly set aside the order appealed from. (*Hobart* v. *Ford,* 6 Nev. 78.)

A court of law could not give plaintiff what it asks and is entitled to under the complaint. Upon a recovery of the stock, had that been attempted, respondent would have found itself with a barren victory; it would have had stock issued in the name of Sears's trustee, which, without his indorsement, would have been valueless; resort then must have been had to a court of equity to compel an indorsement. A recovery of the stock could not help respondent's rights against the Allen Company, and the interposition of equity would have been necessary again.

We know of no rule which demands multiplicity of actions to obtain a desired result; on the contrary, both law and equity demand the opposite course; hence the action at bar. If it presents a *prima facie* case for the final relief asked, or for any relief, then respondent is entitled to an injunction to prevent any alteration of the condition of affairs, until the proper relief is ascertained; otherwise it might be impossible when ordered.

II. Where chattels are not of especial value a court of equity will restrain the party in possession from disposing of them or otherwise defeating the remedy. (*Hunt* v. *Mootry,* 10 How. Pr. 478; *Lady Arundel* v. *Phipps,* 10 Vesey, 140.)

A plaintiff in an action for the recovery of personal property may obtain, *in addition* to the remedy afforded at law, an injunction for a wrongful disposition. (*Epstein* v. *Brey et al.,* 13 How. Pr. 91; *Hunt* v. *Mootry, supra;* 2 Wait's Pr. 32.)

By the Court, Hawley, C. J.:

Upon filing its complaint, plaintiff obtained an order requiring defendants to appear on a certain day, therein

named, and show cause, if any they could, why an injunction should not issue, and in the meantime defendant Sears was restrained and enjoined from selling, transferring or in any manner disposing of "certain certificates or shares of stock, issued by the Allen Company, to any party, person or corporation than plaintiff. On the return day defendant Sears appeared specially by his attorneys and moved "to quash and dismiss the order to show cause." The court overruled this motion and ordered that the restraining order be continued until the further order of this court."

This appeal is taken, by defendant Sears, from the order of the court "refusing to dissolve the injunction heretofore granted in this action."

Appellant claims that the injunction ought to have been dissolved, because the complaint fails to show that plaintiff has not a plain, speedy and adequate remedy at law, and argues that it had such a remedy by the ordinary action of replevin. From the allegations of the complaint—which, in this case as presented, must be taken as true—it will be observed, as is therein stated, that it is impossible to measure plaintiff's injuries in damages. It is alleged that plaintiff made the purchase of the certificates of stock, to buy its peace, to save annoyance, to avoid litigation and to prevent a cloud upon its title; that the value of said shares of stock was merely nominal and could not be estimated like the shares of stock in other corporations having a market value.

Under the provisions of section 202 of the civil practice act (1 Comp. L. 1263), the judgment in actions to recover the possession of personal property must be in the alternative, and if the property cannot be delivered, the judgment is satisfied by the payment of damages. In actions of this character, where the remedy at law would be inadequate, and the injury to plaintiff be irreparable, equity will interfere by injunction and restrain the party wrongfully in possession of the property from disposing of it. (2 Wait's Pr. 31, 32, and the authorities there cited.) It would, for reasons already stated, be unnecessary for plaintiff to allege the insolvency of the defendant, and the complaint is not defective in this respect.

The verification to the complaint·is in the form required by section 113 of the practice act (1 Comp. L. 1174), which implies that the averments of the complaint may be made upon information and belief.

It is argued that the plaintiff so carelessly and negligently left the certificates of stock standing in the name of a trustee regularly indorsed, as to clothe any person, from whom Sears may have purchased, with the *indicia* of ownership thereof. Counsel upon this, as well as other points, assume that Sears was a *bona fide* purchaser for value,—a fact that plaintiff was not required to, and did not allege, and which this Court, under the averments of the complaint, is not authorized to presume. There is an allegation in the complaint that the certificates were in plaintiff's possession "until the same were lost, or, as plaintiff is informed and believes, *were stolen* from it." The question whether or not due diligence has been used by plaintiff to recover the certificates of stock, or put third parties on notice of its loss, is one that could not be raised by appellant unless it was, at least, shown that he was an innocent purchaser in good faith. It is, therefore, unnecessary to discuss this or other objections urged by appellant.

In our opinion the complaint states a *prima facie* case, and as there was no answer to the complaint, nor any showing made upon the merits of the case, and inasmuch as the granting or refusing an injunction *pendente lite* rests very much in the sound discretion of the court, we do not think its order ought to be disturbed. This disposes of the appeal, and renders it unnecessary to notice the preliminary objections, on questions of practice, urged by respondent.

The order appealed from is affirmed.

BEATTY, J., dissenting:

I dissent upon the ground that the complaint does not make a case for the extraordinary relief sought. The means resorted to by plaintiff for the purpose of quieting its title deserve anything but favor in a court of equity. There are certain classes of transactions which, because they are

universally attended by opportunities and temptations to commit a fraud, are presumed, from motives of public utility, to be always fraudulent. It appears to me that the complaint discloses a transaction of that kind. A corporation finds that another corporation is asserting a claim to a portion of the mining ground owned and possessed by it, and is so "greatly annoyed" thereby that it determines to buy its peace. Instead of pursuing the plain, simple, direct, honest and effective method of accomplishing that object by purchasing its adversary's quitclaim, it goes to work to secure the control of the antagonist corporation by buying up its stock. The *modus operandi* is a familiar spectacle. By means of its agents it first gets control of a majority of the stock, and next proceeds to "freeze out" the minority stockholders, which, as they are practically remediless, is an easy operation. It is just possible that a transaction of this kind might be consummated without defrauding the minority; and so is it possible that one who purchases from himself as the agent of the vendor may pay a due regard to the interests of his principal, or a ward make a voluntary donation to his guardian, without being unduly influenced. But such instances are so extremely rare, and so little to be expected, that every presumption is against their *bona fides*. The same presumption of fraud, I think, should attach to the operation attempted by the plaintiff here, and to the consummation of which he invokes the aid of the extraordinary powers of a court of equity. The case made by the complaint is simply this: If the court does not decree the return of the stock of the Allen Company in controversy, the plaintiff will lose the control of the Allen Company, which may then assert its claim to plaintiff's ground and cloud its title. In view of the extremely liberal remedy afforded by our statute for wrongs of this nature, such a result would not appear to involve irreparable damage to the plaintiff. A recovery of the value of the stock it claims to have lost would restore it to its original position, and it might then proceed by regular and legitimate means to quiet its title or buy its peace. But aside from these considerations, the

reason which is conclusive to my mind for denying the in-junction and all the equitable relief prayed for is, that the courts, so far from going out of their usual course to aid a transaction of this kind, should sternly discountenance a proceeding which always and inevitably involves temptations and opportunities of fraud, and should therefore be pre-sumed to have been resorted to for fraudulent purposes, especially when there were more direct, legitimate and effective means of honestly accomplishing the avowed object.